IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL R. FINNEY,

    Plaintiff,

v.                                                                            04cv1086
                                                                              *Adversary No. 04-2482*
                                                                              *Bankruptcy No. 00-27159*

ROYAL SUN ALLIANCE INSURANCE COMPANY,
a/k/a ROYAL INSURANCE COMPANY OF
AMERICA, and
PATRICK J. LOUGHNEY,

    Defendants.

## MEMORANDUM OPINION ON SUMMARY JUDGMENT

**August 29, 2005**

    **Factual Background and Procedure**

    Before the Court are separate motions for summary judgment filed by defendants Royal Sun Alliance Insurance Company ("Royal") and Patrick J. Loughney, Esquire. After careful consideration of the motions for summary judgment and plaintiff Daniel R. Finney's responses, the memoranda of law in support and in opposition, and the voluminous materials produced by the parties in support and in opposition, the Court will grant summary judgment for defendants.

    This Court withdrew the automatic reference to Bankruptcy Court on October 21, 2004 of Plaintiff/ debtor's amended adversary complaint stating claims under Pennsylvania's Dragonetti Act, 42 Pa.C.S. § 8351, "Wrongful use of civil proceedings" against Royal (Count I) and Loughney (Count II), and for common law abuse of process against both defendants (Count III). The Second Amended Complaint sets forth the following.

    On June 1, 2000, a fire destroyed Daniel Finney's house and barn in Elizabeth Pennsylvania. Finney had a policy of homeowner's insurance with Royal for over one million

dollars, including personal property coverage, and he made a claim immediately after the fire. Mr. Finney, a general contractor by trade, had a $410,000 mortgage on the property, which he had taken out in March 2000 to pay for his home remodeling project, which he had just completed.

On advice of counsel, Dennis Spyra, Esquire, plaintiff did not make his mortgage payments while the claim was being investigated, and declared bankruptcy given the impending mortgage foreclosure on September 13, 2000. Eventually, on March 23, 2001, Royal paid off the mortgage, but refused to pay anything else on plaintiff's claim. Royal's investigation indicated the June 1st fire had been intentional, and that plaintiff had made a claim against another insurance company in November 1996 for a fire at his previous residence that Royal learned had been caused by arson. Plaintiff did not disclose that previous claim on his application for insurance with Royal, and defendants deemed that to be fraud in the application.

Attorney Spyra filed an adversary action in the bankruptcy proceeding against Royal for breach of contract and bad faith under Pennsylvania's insurance bad faith statute, 42 Pa.C.S. § 8371, and another member of this Court granted Royal's motion to withdraw the automatic reference on January 17, 2001. *Finney v. Royal Sun Alliance Insurance Company*, Civil Action No. 01-120. Defendant Loughney drafted and filed a counterclaim on Royal's behalf, asserting that plaintiff had committed fraud in his application for insurance and had caused the fire intentionally, and seeking costs and expenses, including refund of the payments it already had made.

A jury in a trial before Chief Judge Donetta Ambrose of this Court found on April 12, 2002 that defendant had breached its contractual obligations to plaintiff by refusing to pay

additional amounts on the claim, and awarded damages in the amount of $147,225.54 (as modified by the Court which added prejudgment interest in the amount of $38,584.08). The jury returned a verdict for Royal on the bad faith claim, however, and for plaintiff on Royal's counterclaim.

Plaintiff alleges in his Second Amended Complaint that Royal and attorney Loughney acted without probable cause and for an improper motive in filing and prosecuting the counterclaim alleging he committed arson and fraud, primarily for the purpose of "coercing, intimidating and dissuading Mr. Finney from pursuing his claim against Royal thereby saving a substantial amount of money by not paying the claim." Second Amended Complaint at ¶ 38. Both defendants filed motions for summary judgment asserting that the record evidence shows as a matter of law that there was probable cause to file their ultimately unsuccessful counterclaim and that they acted for legitimate business and strategic reasons, and that plaintiff has not produced sufficient contradictory evidence to support his claims. The Court agrees and will grant summary judgment for defendants.

**Summary Judgment Standards**

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."*Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted). An issue of material fact is genuine only if the evidence is such

that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A factual dispute is material if it 'bear[s] on an essential element of the plaintiff's claim,' and is genuine if 'a reasonable jury could find in favor of the nonmoving party.' " *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 210 (3d Cir.2002) (*quoting Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir.1999)) (alteration in original). "The substantive law governing the dispute will determine which facts are material, and only disputes over those facts 'that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *DeHart v. Horn*, 390 F.3d 262, 267-68 (3d Cir. 2004), *quoting Anderson*, 477 U.S. at 248.

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993).

In deciding a summary judgment motion, a court must take the facts in the light most favorable to the nonmoving party, and must draw all reasonable inferences and resolve all doubts in their favor. *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001); *Woodside*, 248 F.3d at 130; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). Moreover, a district court may not make credibility determinations or engage in any weighing of the evidence at the

summary judgment stage; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004), *quoting Liberty Lobby, Inc.*, 477 U.S. at 255; *Josey v. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993).

**Discussion**

**Wrongful Use of Civil Proceedings -- Counts I and II**

Wrongful use of civil proceedings is a tort which arises when a party institutes a lawsuit with a malicious motive and lacking probable cause. *Hart v. O'Malley*, 781 A.2d 1211, 1219 (Pa.Super. 2001). In Pennsylvania, this tort is embodied in the Dragonetti Act, which provides in part:

> (a) Elements of action.--A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
>
> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351.

The Dragonetti Act abandoned the element of the common law tort of wrongful use of civil proceedings or malicious prosecution which required the arrest or seizure of the person or property of the plaintiff as a necessary element. It also defined "probable cause" and proscribed the burdens of proof. Section 8352 states that probable cause exists for initiating or continuing

5

civil proceedings if the person reasonably believes in the existence of the facts upon which the claim is based, and either:

> (1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;
>
> (2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or
>
> (3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S. § 8352.

The elements specified in the statute which the plaintiff must prove by a preponderance of the evidence are: (1) defendant "procured, initiated or continued" the civil proceedings; (2) the proceedings terminated in plaintiff's favor; (3) defendant did not have probable cause for procuring, initiating or continuing the action; (4) the "primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based"; and (5) damages. 42 Pa.C.S. § 8353.

Thus, to succeed on claim for wrongful use of civil proceedings, plaintiff must show that defendants lacked a reasonable belief in the facts on which their counterclaim was based and in the validity of the claim under existing or developing law. *Broadwater v. Sentner*, 725 A.2d 779 (Pa. Super. 1999), *appeal denied*, 562 Pa. 664, 753 A.2d 814 (2000). *See also Keim v. County of Bucks*, 275 F.Supp.2d 628 (E.D.Pa. 2003) (to establish claim for abuse of process in Pennsylvania, plaintiff must show that defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) that harm was caused to the plaintiff as a result).

The filing of a counterclaim may constitute the "continuation" of civil proceedings under the Dragonetti Act; however, "an action for the wrongful use of a counterclaim demands that courts examine such claims closely, lest a defendant be punished for nothing more than defending himself or herself against a claim made by another." *Mi-Lor, Inc. v. DiPentino*, 439 Pa.Super. 636, 654 A.2d 1156, 1158 (Pa. Super. 1995). An attorney who knowingly prosecutes a groundless action to accomplish a malicious purpose may be held accountable under the Dragonetti Act. *Electronic Laboratory Supply Co. v. Cullen*, 712 A.2d 304, 310 (Pa. Super. 1998).

The Court finds that a reasonable jury could not disagree, on the record before the Court, that defendants had probable cause to pursue the counterclaim, and that there is no evidence other than plaintiff's sheer speculation that defendants acted with an improper motive.

On advice of attorney Loughney, Royal filed and prosecuted the counterclaim in plaintiff's adversary proceeding. Loughney and employees of Royal who decided to file the counterclaim testified in their depositions that they believed plaintiff committed both fraud and arson as a result of Royal's thorough investigation. That investigation showed, *inter alia*, that plaintiff had been undergoing financial distress and that he had made a claim for an arson fire in 1996 which had not been disclosed on his application with Royal.

Defendants' proffered testimony would not be sufficient to conclude, as a matter of law, that there was probable cause or that defendants did not have improper motives, but in this case, there are five "second opinions" that support defendants, and no significant countervailing evidence.

First, attorney Spyra did not make a motion to dismiss or a motion for summary

7

judgment on the counterclaim to the adversary complaint in the *Finney v. Royal Sun Alliance Insurance Company* proceeding before Chief Judge Ambrose. His strategic decision not to pursue a motion to have the counterclaim dismissed prior to trial suggests an implicit "second opinion" by plaintiff's own attorney that the counterclaim had arguable merit, and indeed, attorney Spyra indicated in his deposition that he believed the counterclaim was proper and was supported. Royal's Exhibit J, Spyra dep. at 63-64. Moreover, the proof offered in support of its affirmative defense to plaintiff's claim was identical to the proof in support of the counterclaim. Fed.R.Civ.P. 13(a) requires compulsory counterclaims be filed along with answers and affirmative defenses, and it would be inappropriate, in the opinion of an insurance defense practitioner of long experience in the community, not to include a counterclaim presented by the same facts as the affirmative defense. Expert Report of Richard DiBella, Esquire, Royal Exhibit E (the second "second opinion").

The third "second opinion" was that of attorney Carey Valyo, who took over Royal's defense at trial. Mr. Valyo assessed the counterclaim when he took over the case, and determined that it should go forward, and he *still* believes, based upon his review of the evidence, that plaintiff had something to do with the fire. Royal's Exhibit H, Valyo Dep. at 14-15.

Fourth, plaintiff's own expert witness, Mr. James E. DePaquale, Esquire, authored an expert report concluding that the counterclaim lacked probable cause and may have been influenced by a desire to "bluff" plaintiff into giving up his claim with Royal. However, Mr. DePaquale's ultimate opinion is inconsistent with much of his testimony in deposition and internally inconsistent with other important items expressed in the report. Reviewing the

expert's report and testimony as a whole, the Court finds that plaintiff's expert actually supports defendants' decision to file and prosecute the counterclaim in critical respects, and that the reasons he ultimately concluded that there was no probable cause to pursue a counterclaim and there may have been improper motive are not supported by sufficient evidence and are not persuasive.

<u>Expert Report</u>   Mr. DePasquale's report of July 11, 2005, Royal's Exhibit K, sets forth the following: On June 1, 2000, plaintiff was in financial straits, had missed his last mortgage payment and owed taxes to the IRS; in November, 1996, plaintiff owned rental property in Westmoreland County Pennsylvania that was destroyed by arson, and he made a claim to State Farm Insurance which paid him $70,000 on the claim; the arson fire and insurance claim was not disclosed to Royal on plaintiff's application for insurance, although subsequently plaintiff's agent, who filled out the application after getting the information from plaintiff, took responsibility for that omission; plaintiff was at his residence on May 31, 2000 until about 10:00 pm, at which point he spent the night at his girlfriend's apartment; a criminal investigation was immediately opened and "Mr. Finney was a suspect in the arson, as he had motive -- ownership of the property and financial difficulties -- and he had owned property that also was destroyed by arson fire"; plaintiff was not, however, charged criminally for the arson because, "[a]lthough there was ample reason to suspect Mr. Finney in the arson," there was insufficient proof to either arrest him or deny his insurance claim; plaintiff was "the focus of a criminal investigation, and Royal . . . did perform a thorough investigation.  There was ample reason to suspect Mr. Finney's involvement in the arson, but there was no proof."  In Mr. DePasquale's opinion, the lack of any admissions or physical evidence should have convinced defendants to drop the

9

counterclaim, namely: plaintiff "never admitted to anyone his involvement, and in fact always denied any involvement"; plaintiff was "not at the scene when the fire erupted, he was never linked to the purchase or transport of accelerant, and he was never linked to a third party who might have set the fire."

The expert's ultimate conclusion was, to a reasonable degree of professional certainty, "there was no probable cause (i.e. reliable evidentiary proof) to support the filing and/or prosecution of counterclaims alleging any fraud whatsoever against Mr. Finney.  Filing the counterclaims was apparently either the result of misguided evaluation of the evidence or the result of a bluff to intimidate Mr. Finney into withdrawing his claims for damages. . . . There was no probable cause to bring civil fraud claims against [plaintiff]."  However, in his deposition, attorney DePasquale was unable to articulate any factual basis for ascribing any improper motive to defendants' actions in filing and prosecuting the counterclaim, nor was he able to attribute any damages suffered by plaintiff as a result.  In fact, as to defendant Loughney, attorney DePaquale stated he did not see anything to indicate bad motive; he simply believed Mr. Loughney was wrong, but did not think Mr. Loughney decided to make life miserable for the plaintiff.  Loughney's Exhibit 5, at 69-73.

Fifth and most compelling is the "second opinion" implicitly but quite clearly rendered by Chief Judge Ambrose of this Court. In charging the jury in *Finney v. Royal Sun Alliance*, the Court instructed the jury that the facts supporting the affirmative defenses and the counterclaim were the same, and that a finding in favor of the defendant on the counterclaim would preclude recovery by plaintiff on his claims.  Plaintiff's own expert acknowledged that when the case got past the non-suit stage, and the Court sent it to the jury on those instructions, that meant there

was "a question of fact as it relates to the matters presented so as to have the trier of fact decide the case." Royal Exhibit 5, at 62-63. Attorney DePaquale agreed Judge Ambrose did not direct a verdict for plaintiff at the conclusion of the case, that there was a question of fact based on the evidence gathered and presented, that the Court sent the whole case to the jury, and "that Judge Ambrose was satisfied that there was enough evidence to send those counterclaims to the jury." *Id.* at 63.

To those five "second opinions" this Court adds the sixth. Although the counterclaim was unsuccessful, there was sufficient evidence upon which to file a counterclaim and prosecute it in *Finney v. Royal Sun Alliance*, although the jury did not decide in Royal's favor on the counterclaim or affirmative defense. It also is significant, but not dispositive, that the jury rejected plaintiff's claim that Royal acted in bad faith in denying the claim, for if the jury believed that Royal had no legitimate evidentiary basis for denying plaintiff's insurance claim, it would have been logical for it to find bad faith. Thus, rejection of plaintiff's bad faith claim and rejection of defendant's counterclaim are consistent with a finding that there was sufficient evidence to deny the claim and raise arson and fraud in the counterclaim, but not enough to prove arson and fraud by a preponderance of the evidence.

In short, the record on summary judgment shows that defendant Loughney did what effective and professional lawyers are expected and obliged to do; he vigorously defended his client based upon his reasonable evaluation of the evidence. That the jury did not agree with his and Royal's evaluation does not make that evaluation and legal action taken unreasonable or unsupported by probable cause, nor does it prove improper motives. The insurance company and its lawyers had, in plaintiff's expert's words, "ample evidence" to suspect plaintiff

committed fraud and arson, and did not believe Mr. Finney's alibi and did not find him credible; the Court and the lawyers involved in the case believed there was sufficient evidence to let the issues go to the jury; the jury did not agree with defendants' evaluation of the evidence and apparently found plaintiff to be credible. That is not the stuff of which "wrongful use of civil proceedings" actions are made.

Because reasonable persons could not disagree that defendants had probable cause to initiate and continue their counterclaim, and that there is no evidence that defendants acted for an improper purpose, the Court holds, as a matter of law, that plaintiff has failed to sustain its burden of proof as to essential elements of his claim under the Dragonetti Act, and summary judgment must be granted on Counts I and II of the Second Amended Complaint.

### Abuse of Process -- Count III

Common law abuse of process is defined as "the use of legal process against another primarily to accomplish a purpose for which it is not designed." *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. 2002), *quoting Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa.Super. 1998) and *Rosen v. American Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993). Thus, to establish a claim for abuse of process under the law of Pennsylvania, it must be shown that the defendant (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed, and (3) that harm was caused to the plaintiff as a result. *Id.* The torts of malicious prosecution and abuse of process are separate and distinct, but often confused. *Werner v. J. Plater-Zyberk*; *Hart v. O'Malley*, 781 A.2d 1211, 1219 (Pa.Super. 2001); *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 191 (Pa. Super. 1994). As recently

stated by a colleague in the Eastern District of Pennsylvania:

> Although often confused, in Pennsylvania, the common law torts of malicious use of process and malicious abuse of process are separate and distinct claims. . . . Abuse of process, on the other hand, involves a perversion of the legal process to accomplish some unlawful purpose for which it was not designed. . . . "The classic example" of abuse of process "is the initiation of a civil proceeding to coerce the payment of a claim completely unrelated to the cause of action sued upon."

*United States of America ex rel. Magin v. Wilderman*, 2005 WL 469590, *2 (E.D.Pa. 2005). *But see U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002) (stating in dictum that both malicious use of process and abuse of process are subsumed within the general scope of the Dragonetti Act).

For the reasons set forth in the preceding section, there is no evidence that defendants perverted the legal process to accomplish some unrelated purpose for which the legal process was not designed, and summary judgment will be granted in their favor on Count III.

**Conclusion**

For all of the foregoing reasons, the Court will grant summary judgment in favor of defendants and against plaintiff on all claims. An appropriate order will be entered.


                    s/ Arthur J. Schwab
                    **Arthur J. Schwab**
                    **United States District Judge**

cc:    All counsel of record as listed below

United States Bankruptcy Court
Western District of Pennsylvania

Kenneth R. Behrend, Esquire
Kenneth W. Behrend, Esquire
Behrend & Ernsberger
306 Fourth Avenue, Suite 300
Pittsburgh, PA 15222

Jeffrey A. Ramaley, Esquire
Zimmer Kunz
600 Grant Street
3300 USX Tower
Pittsburgh, PA 15219

Robert J. Behling, Esquire
Dapper, Baldasare, Benson & Kane
401 Liberty Avenue
Suite 1375, Three Gateway Center
Pittsburgh, PA 15222